IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KAYREN GAY LEWIS,

              Plaintiff,

    v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

              Defendant.

CIVIL ACTION FILE NO.

1:06-CV-1592-JFK

## FINAL OPINION AND ORDER

Plaintiff Kayren Gay Lewis brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration which denied her application for a period of disability, disability insurance benefits, and supplemental security income. [Doc. 1]. For the reasons set forth below, the court **ORDERS** that the Commissioner's decision be **AFFIRMED**.

## I.    Procedural History

Plaintiff Kayren Gay Lewis applied for a period of disability, disability insurance benefits, and supplemental security income on February 27, 2001, alleging disability since January 29, 2001. [Record ("R.") at 104-06, 742-44]. After her

applications were denied initially and on reconsideration, she requested an administrative hearing, which was held on November 8, 2004, before an Administrative Law Judge ("ALJ"). [R. at 37-75, 746-58]. The ALJ issued a decision on February 10, 2005, denying Plaintiff's claims. [R. at 26-36]. Plaintiff requested review of the ALJ's decision, but the Appeals Council denied her request on May 8, 2006, making the hearing decision the final decision of the Commissioner. [R. at 7-9]. On July 3, 2006, Plaintiff filed the above-styled action in this court seeking review of the final decision. [Doc. 1].

## II.    Facts

The ALJ found that Plaintiff Lewis has residuals from a motorcycle accident, anxiety attacks, borderline intellectual functioning, and headaches. [R. at 31, 35]. Although these impairments are "severe" within the meaning of the Social Security Regulations, the ALJ found that they did not meet or equal, either singly or in combination, the requirements for any impairment listed in Appendix 1, Subpart P, Regulations No. 4. [R. at 31]. The ALJ found that Plaintiff is unable to perform any of her past relevant work. [R. at 33, 35]. However, the ALJ concluded that Plaintiff was able to perform a significant range of sedentary work, which included jobs as a nut

2

sorter, a dowell inspector, and a carding machine operator.  [R. at 34-36].  Plaintiff, therefore, was not under a disability at any relevant time.  [R. at 35-36].

The ALJ's decision [R. at 29-36] states the relevant facts of this case as modified herein as follows:

The claimant is a forty year old female with a seventh grade education.  Her past work experience includes employment as a sewing machine operator, a cashier, a kitchen helper and an animal caretaker.  The claimant alleges that she became disabled on January 29, 2001, due to lasting effects from a motorcycle accident, constant pain and her limited education.  Claimant tried working for two days at Blimpie's six months prior to the hearing and also worked one and one-half days as a dishwasher in Florida after the alleged onset date.  The claimant has not engaged in substantial gainful activity after her alleged onset date.

The claimant was apparently involved in a motorcycle accident on January 29, 2001, during which she fractured her pelvis and thigh bones and ruptured her bladder. (Exhibit 4F, pp. 36-88, and Exhibit 2F, pp. 7-10, 36, 39, 41-42, 45, 47, 50).  Surgery for the repair of her bladder and pelvis was performed in January of 2001.  (Exhibit 2F, pp. 5-6, 13-17, 23-26).  Additional surgery for the stabilization of her pelvis was performed on February 6, 2001.  (Exhibit 3F, pp. 3-10).

3

The claimant also sustained an initial brain concussion during the 2001 motorcycle accident; however, a computerized axial tomography scan of the brain performed on January 29, 2001, revealed no fractures or neurological damage. (Exhibit 2F, pp. 11, 40). In addition, x-rays taken at the time of her accident showed no fractures to her back or neck. (Exhibit 3F, p. 3, and Exhibit 2F, pp. 35, 43-44, 46). The record indicates that she reported to Shands' Emergency Department on November 23, 2003, complaining of low back pain. However, x-rays taken during a September 2003 emergency visit at Newton Hospital showed no evidence of any acute traumatic injury to her lumbar spine nor any spondylolysis or spondylolisthesis. (Exhibit 21F, p. 9).

The claimant only acquired a seventh grade education having been married at age fifteen. (Exhibit 9F, p. 1). She stated she was in special education classes. A psychological evaluation completed on October 17, 2002, by Dr. Catherine B. Howell, a psychologist, revealed no evidence of organic brain dysfunction. (Exhibit 9F, p. 5). Test scores indicate that the claimant functions in the borderline range of intellectual functioning, with a Full Scale IQ of 78, and reads at the fourth grade level. (Exhibit 9F, pp. 4, 7). She also suffers from anxiety attacks but is no more than mildly limited in her activities of daily living and only moderately limited in her concentration,

4

persistence, pace and social functioning.  (Exhibit 10F, p. 10).  According to Dr. Howell, the claimant is able to behave in an emotionally stable manner.  (Exhibit 9F, p. 5).  However, according to Dr. Howell, the claimant is unable to effectively cope with any level of job stress.  (Exhibit 9F, p. 6).  Dr. Howell states that this is due to the claimant's emotional state and her physical problems.  (Exhibit 9F, p. 5).

The claimant's chief complaint seems to be that of debilitating headaches.  The evidence reveals that she goes from one emergency room to another complaining of "headaches."  (Exhibit 24F and Exhibit 23F).  After advising emergency staff of an alleged allergy to codeine, she is usually given a supply of narcotic pain medication and released.  (Exhibit 24F; Exhibit 23F, pp. 2-4; Exhibit 22F, p. 4; Exhibit 21F, p. 9; Exhibit 20F, pp. 3, 11-12, 16; Exhibit 19F, pp. 6-8, Exhibit 17F, p. 3; and Exhibit 16F, pp. 6-13).  Despite assurances to follow up with a primary treating physician, she continues to seek out emergency care providers.  (Exhibit 24F, p. 8; Exhibit 23F, p. 3; and Exhibit 20F, pp. 4, 8, 12, 17).

An examination performed in December, 2004, by Dr. Arthur J. Pasach reveals that the claimant has no pathologic reflexes despite her refusal to exert herself during her physical examination.   (Exhibit 25F).   X-rays taken at that time were also unremarkable.  Although the claimant apparently did suffer some pelvic injuries in the

January 29, 2001, accident, Dr. Pasach noted that her gait was not ataxic (despite leaning on her husband) and that her upper extremity range of motion was normal. (Exhibit 25F, p. 3).   Deep tendon reflexes were normal.   He also noted that the claimant was high on drugs and alcohol at the time of the 2001 accident and reported that the claimant's husband said that he buys prescription (narcotic) painkillers on the street, presumably for the claimant's use.   (Exhibit 25F, p. 2).   In fact, the record demonstrates that the claimant has what appears to be narcotics seeking behavior, with a pattern of showing up at different emergency care facilities and obtaining narcotic pain medications, including Lorcet, Lortab, Vicodin, Hydrocodone, Demerol and Darvocet.   (Exhibit 24F; Exhibit 23F, pp. 2-4; Exhibit 22F, p. 4; Exhibit 21F, p. 9; Exhibit 20F, pp. 3, 11-12, 16; Exhibit 19F, pp. 6-8, Exhibit 17F, p. 3; and Exhibit 16F, pp. 6-13).   Moreover, on August 18, 2002, she admitted that she was drinking at least three packs of alcohol per week.   (Exhibit 21F, p. 4; Exhibit 15F, p. 23; Exhibit 4F, p. 36 (claimant admitted drinking about a six pack of beer per day); Exhibit 3F, p. 9; and Exhibit 2F, p. 28 (eight beers on the day of the accident)).   According to Dr. Pasach, the claimant has grossly misrepresented her limitations and is malingering.   (Exhibit 25F).

AO 72A
(Rev.8/82)

### III.   Standard of Review

An individual is considered to be disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See 42 U.S.C. §§ 423(d)(2) and (3).

The scope of judicial review of the Commissioner's decision is limited. The court's function is to determine (1) whether the record, as a whole, contains substantial evidence to support the findings and decision of the Commissioner and (2) whether the Commissioner applied proper legal standards. See Vaughn v. Heckler, 727 F.2d 1040, 1042 (11th Cir. 1984). Substantial evidence is more than a scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.  See Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The claimant has the initial burden of establishing the existence of a "disability" by demonstrating that she is unable to perform her former type of work.  If the claimant satisfies her burden of proving disability with respect to her former type of work, the burden shifts to the Commissioner to demonstrate that the claimant, given her age, education, work experience, and impairment, has the capacity to perform other types of jobs which exist in the national economy.  See Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

Under the regulations as promulgated by the Commissioner, a five step sequential procedure must be followed when evaluating a disability claim.  See 20 C.F.R. §§ 404.1520(a) and 416.920(a).  In the sequential evaluation, the Commissioner must consider in order: (1) whether a claimant is gainfully employed, 20 C.F.R. §§ 404.1520(b) and 416.920(b); (2) whether claimant has a severe impairment which significantly limits her ability to perform basic work-related functions, 20 C.F.R. §§ 404.1520(c) and 416.920(c); (3) whether claimant's impairments meet the Listing of Impairments, 20 C.F.R. §§ 404.1520(d) and 416.920(d); (4) whether claimant can perform her past relevant work, 20 C.F.R. §§ 404.1520(e) and 416.920(e); and (5)

8

whether claimant is disabled in light of age, education, and residual functional capacity, 20 C.F.R. §§ 404.1520(f) and 416.920(f).  If, at any step in the sequence, a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends.  See 20 C.F.R. §§ 404.1520(a) and 416.920(a).

## IV.    Findings of the ALJ

The ALJ made the following findings:

1.    The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through March 31, 2004.

2.    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.    The claimant's residuals from a motorcycle accident, anxiety attacks, borderline intellectual functioning, and headaches are considered "severe" based on the requirements in Regulations 20 CFR §§ 404.1520(d) and 416.920(b).

4.    These medically determinable impairments do not meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4.

5.    The claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

9

6.   The claimant retains the residual functional capacity to perform unskilled sedentary work involving no significant interaction with the public, and is able to sit for six hours in an eight hour workday; stand and walk for two hours in an eight hour workday; frequently perform handling and fingering tasks; and occasionally climb, balance, kneel, stoop, crouch, and crawl; but she is unable to push and pull with her lower extremities, and can perform no work on ladders, ropes, scaffolds or at unprotected heights.

7.   The claimant is unable to perform any of her past relevant work (20 CFR §§ 1565 and 416.965).

8.   The claimant is a "younger individual" (20 CFR §§ 404.1563 and 416.963) with the equivalent of "a marginal education" (20 CFR §§ 404.1565 and 416.964).

9.   The claimant had only unskilled past relevant work (20 CFR §§ 404.1568 and 416.968).

10.   The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR §§ 404.1567 and 416.967).

11.   Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.24 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform.  Examples of such jobs include work as a Nut Sorter (DOT #521.687-086, sedentary, unskilled), a Dowell Inspector (DOT #669.687-014, sedentary, unskilled), and a Carding Machine Operator (DOT # 681-685-030, sedentary, unskilled).  Of the 7,000 nationally available Nut Sorter jobs, there are approximately 400 such jobs in the state of Georgia; of the 4,000 nationally

available Dowell Inspector jobs, there are approximately 300 such jobs in the state of Georgia; and of the 4,000 nationally available Carding Machine Operator jobs, there are approximately 130 jobs in the state of Georgia.

12. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

[R. at 35-36].

## V.    Discussion

In the present case, the ALJ found at the first step of the sequential evaluation that Plaintiff Kayren Gay Lewis had not performed substantial gainful activity since her alleged onset of disability. [R. at 35]. At the second step, the ALJ determined that Plaintiff has residuals from a motorcycle accident, anxiety attacks, borderline intellectual functioning, and headaches. [R. at 35]. Although these impairments are "severe" within the meaning of the Social Security Regulations, they did not meet or equal, either singly or in combination, the requirements for any impairment listed in Appendix 1, Subpart P, Regulations No. 4, at the third step. [Id.]. The ALJ found at the fourth step of the sequential evaluation that Plaintiff was not able to perform any of her past relevant work. [Id.]. At the fifth step, however, the ALJ found that Plaintiff was able to perform a significant number of sedentary jobs, including nut

11

sorter, dowell inspector, and carding machine operator. [R. at 36]. Plaintiff, therefore, was not under a disability at any relevant time. [R. at 36]. Plaintiff argues that the ALJ failed to apply proper legal standards and that his decision is not supported by substantial evidence. [Doc. 13]. According to Plaintiff, the ALJ erred when he found that she did not have an impairment which meets or equals a listing, when he found her subjective complaints regarding her limitations to be less than credible, and when he found that she had the ability to frequently perform handling and fingering tasks. Plaintiff also argues that the ALJ did not properly evaluate her mental condition and did not consider the combined effects of her impairments. [Id.].

### A.    Listing of Impairments

Plaintiff Lewis argues that the ALJ erred when he concluded that Plaintiff's impairments did not meet or equal Listing 1.02(A) or Listing 1.06. [Doc. 13 at 2-5]. "In order to *meet* a listing, the claimant must (1) have a diagnosed condition that is included in the listings and (2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable listing and the duration requirement. . . .  In order to *equal* a listing, the medical findings must be at least equal in severity and duration to the listed findings." Wilkinson on Behalf of Wilkinson v.

<u>Bowen</u>, 847 F.2d 660, 662 (11th Cir. 1987) (emphasis in original) (citing 20 C.F.R. §

416.925).

> The impairment described in Listing 1.02(A) is as follows:
>
> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With: Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.02(A).  Listing 1.06 is comprised of the

following: "Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones.

With: A. Solid union not evident on appropriate medically acceptable imaging and not

clinically solid; and B. Inability to ambulate effectively, as defined in 1.00B2b, and

return to effective ambulation did not occur or is not expected to occur within 12

months of onset."  20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.06.  Plaintiff contends that

she meets both Listings 1.02(A) and 1.06 because her "status post femur fractures of

the right and left, combined with her multiple pelvic fractures and unstable SI joints

bilaterally." [Doc. 13 at 4].  Plaintiff points to radiology reports which show partially

fused S1 joints bilaterally, "minimal irregularity of the superior pubic ramus on the

13

left," "deformity of the left hemipelvis from previous fracture," and "intervertebral disc space narrowing at L5-S1." [Id.]. Plaintiff also cites to records showing frequent complaints of chronic pain, nerve root impingement and radiculopathy. In addition, Plaintiff points to evidence of decreased range of motion, flexibility, and strength in the lower extremities. [Doc. 13 at 5].

The court finds Plaintiff's argument unpersuasive. Plaintiff has the burden of demonstrating that each of the criteria in the applicable listing is met or equaled in severity by her medical findings. In the present case, Plaintiff simply lists numerous findings and then concludes that her impairments "fully meet in severity the medical criteria contained in both section 1.02A and section 1.06 respectively of the Listing of Impairments." [Doc. 13 at 4]. Plaintiff, however, fails to explain how the criteria of each listing has been met. Moreover, as the Commissioner points out, evidence in the record indicates that Plaintiff has failed to meet or equal either Listing 1.02(A) or 1.06. As noted *supra*, Listing 1.02(A) requires a claimant to show a major dysfunction of a joint with "[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle)." Plaintiff has failed to show that she suffers from a major dysfunction of a hip, knee, or ankle.

14

Listing 1.02(A) also requires the claimant to show that a major dysfunction of a major peripheral weight-bearing joint resulted in "inability to ambulate effectively," which "means an extreme limitation of the ability to walk." 20 C.F.R., Pt. 404, Subpt. P, App. 1 §§ 1.00(B)(2)(b), 1.02(A). This extreme limitation "must have lasted, or be expected to last, for at least 12 months." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.00(B)(2)(a). Likewise, Listing 1.06 requires the claimant to show that she suffered from an "[i]nability to ambulate effectively" and that "return to effective ambulation did not occur or is not expected to occur within 12 months of onset." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.06. The evidence in this case does not establish that Plaintiff had an inability to ambulate effectively which lasted for at least twelve months. Progress notes from Plaintiff's medical records show that she was "ambulating independently" on June 7, 2001, slightly more than four months after her motorcycle accident on January 29, 2001. [R. at 502]. Records also establish that on August 2, 2001, six months after the accident, Plaintiff was "[d]oing remarkably well" and was "able to jump and dance." [R. at 502]. In addition, the Commissioner points out that treatment notes show that Plaintiff could ambulate with heel to toe gait in February 2002, was able to move furniture in May 2002, and was ambulating well with full hip, knee, and ankle range of motion in September 2002. [R. at 502-03, 535].

15

For these reasons, the undersigned concludes that Plaintiff Lewis did not carry her burden of proving that she suffered from any impairment that met or equaled Listing 1.02(A) or Listing 1.06.  Substantial evidence supports the ALJ's decision on this issue.

**B.     Credibility Determination**

Plaintiff Lewis argues that the ALJ erred when he found Plaintiff's subjective complaints regarding her limitations to be less than credible.  When a claimant seeks to establish disability through subjective testimony of pain, a three part "pain standard" established by the Eleventh Circuit applies.  <u>Holt v. Sullivan</u>, 921 F.2d 1221, 1223 (11th Cir. 1991).  "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  <u>Id.</u>  Where a claimant's testimony, if credited, could support the claimant's disability, the ALJ must make and explain a finding concerning the credibility of the claimant's testimony.  <u>Viehman v. Schweiker</u>, 679 F.2d 223 (11th Cir. 1982); <u>Scharlow v. Schweiker</u>, 655 F.2d 645 (5th Cir. 1981).  If the ALJ decides to discredit a claimant's testimony of pain or other subjective symptoms, he must give

16

explicit and adequate reasons for doing so.  Holt, 921 F.2d at 1223; Hale v. Bowen,

831 F.2d 1007, 1011 (11th Cir. 1987); Viehman, 679 F.2d at 228.

The ALJ in the present case gave many explicit reasons for discrediting

Plaintiff's testimony.  The ALJ noted in his decision that Plaintiff reported to

examining physician Dr. Arthur Pasach that she lay in a coma for five months

following her motorcycle accident.  [R. at 32, 733].  But, as the ALJ explained,

"contemporaneous medical records show that she was lucid and coherent the day after

the accident, having suffered only a minor concussion." [R. at 32, 200, 734].  The ALJ

also noted that while Plaintiff claimed to have been hospitalized for a year, records

show that she was discharged from in-patient care less than a month after her accident.[1]

[R. at 32, 48, 544-45].  Another reason the ALJ found for discrediting Plaintiff's

testimony was the fact that her activities were inconsistent with her allegations

regarding her inability to sit.  [R. at 32].  Plaintiff reported to Dr. Pasach in December

2004 that she is not able to sit for more than fifteen minutes.  [R. at 734].  However,

correspondence from September 2004 revealed that Plaintiff traveled with her husband

for four months through the summer of 2004, and medical records from November

---

[1]Plaintiff stated that her medications may have caused her to be confused about
the length of her stay.  [R. at 48].

17

2004 indicated that Plaintiff had been "transient and migratory in Florida for a period of time." [R. at 32, 92, 715]. The ALJ also noted that in October 2002, Plaintiff informed hospital staff that she had no "gait instability." [R. at 32, 574].

The ALJ discussed in detail the report of Dr. Pasach and offered it as additional support of his finding of a lack of Plaintiff's credibility. The ALJ noted that Dr. Pasach's examination revealed "no pathologic reflexes despite [Plaintiff's] refusal to exert herself during her physical examination." [R. at 32, 733-38]. The ALJ explained that "Dr. Pasach noted that her gait was not ataxic (despite leaning on her husband), and that her upper extremity range of motion was normal." [R. at 32, 735]. Moreover, "[Dr. Pasach] also noted that the claimant was high on drugs and alcohol at the time of the 2001 accident, and reports that the claimant's husband said that he buys prescription (narcotic) painkillers on the street, presumably for the claimant's use." [R. at 32, 734]. As noted by the ALJ, Dr. Pasach concluded that Plaintiff "grossly misrepresented her limitations, and is malingering." [R. at 32, 733-35].

The undersigned finds that the ALJ's stated reasons for discrediting Plaintiff's allegations of pain and subjective limitations are supported by substantial evidence. The ALJ applied the proper legal standard and gave explicit and adequate reasons for

AO 72A
(Rev.8/82)

discrediting Plaintiff's complaints.   Holt, 921 F.2d at 1223.   Accordingly, the undersigned concludes that remand is not warranted on this issue.

### C.    Plaintiff's Handling and Fingering Ability

The ALJ found that Plaintiff Lewis had a number of functional limitations but that she retained the residual functional capacity ("RFC") for unskilled sedentary work. The ALJ also found that Plaintiff had the ability to frequently perform handling and fingering tasks.  [R. at 33, 35].  Plaintiff argues that this finding is not supported by substantial evidence. [Doc. 13 at 6].  Plaintiff cites a radiology report from December 2004, which revealed changes of osteoarthritis at the DIP joint of the fourth digit in Plaintiff's right hand with joint space narrowing and marginal osteophytes present. [Doc. 13 at 6; R. at 732].  The report also showed mild degenerative arthritis involving the DIP joints of the second through fourth digits in Plaintiff's left hand.  [Doc. 13 at 6; R. at 732].

Plaintiff argues that this radiology report establishes that she had a significant limitation with regard to her ability to handle and work with small objects.  [Doc. 13 at 6-7].  Plaintiff notes that at the administrative hearing, the vocational expert testified that a hypothetical individual with the limitations found by the ALJ could not perform any jobs if she were also limited to occasional rather than frequent handling and

19

fingering.  [R. at 60-61].  The vocational expert's testimony was consistent with Social Security Ruling 96-9p which provides, "Most unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity.  Fine movements of small objects require use of the fingers; e.g., to pick or pinch.   Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions."  SSR 96-9p.  According to Plaintiff, the ALJ erred when he found that she had the ability to frequently perform handling and fingering tasks

The court finds Plaintiff's argument unpersuasive on this issue.  While Plaintiff has pointed to a report showing that she had some mild osteoarthritic changes in her hands, she has offered no evidence that this condition would cause functional limitations that were more severe than those found by the ALJ.  As the Commissioner notes, Dr. Pasach wrote in his report that "AP and lateral films of both hands are completely unremarkable."  [R. at 735].  Dr. Pasach found that Plaintiff had normal range of motion in her hands and fingers.  [R. at 737].  He also found that she had normal fine and gross coordination in the areas of reaching, pushing, pulling, grasping, and fingering.   [R. at 737-38].   Given these findings and the lack of evidence supporting Plaintiff's claim that she was significantly limited in the use of her hands, the court finds that substantial evidence supports the ALJ's finding that Plaintiff has

the capacity to perform unskilled sedentary work with the ability to frequently perform

handling and fingering tasks.  [R. at 33, 35].

###### D.      Plaintiff's Mental Limitations

Plaintiff Lewis next argues that the ALJ failed to consider her mental limitations

and their effect on the occupational base when he found that she could perform a

significant range of sedentary work.  [Doc. 13 at 7].  In support of her argument,

Plaintiff cites to the psychological evaluation completed by Dr. Catherine Howell in

October 2002.  [R. at 506-11].  Dr. Howell found that Plaintiff's "ability to understand,

remember and carry out job instructions appears to be at the difficult level of ability."

[R. at 510].  She also found that Plaintiff "would be unable to cope with any level of

job stress."  [R. at 511].  The ALJ did not adopt Dr. Howell's opinion and, instead,

found that Plaintiff was capable of performing unskilled sedentary work involving no

significant interaction with the public.  [R. at 33, 35].

The court finds that the ALJ's findings regarding Plaintiff's mental limitations

are supported by substantial evidence.  Dr. Howell found that Plaintiff was disabled

because she concluded that Plaintiff was not capable of coping with any job stress.

However, the ALJ was not obligated to adopt the opinion of Dr. Howell, a consultative

psychologist.   The determination about whether a claimant has met the statutory

21

definition of disability is reserved to the Commissioner, and a medical source's opinion that a claimant is disabled is not controlling.  20 C.F.R. § 416.927(e).

In the present case, the ALJ adequately explained why he decided not to give significant weight to Dr. Howell's opinion.  The ALJ noted that Dr. Howell found that Plaintiff is unable to cope with any level of job stress because of her emotional state and her physical problems.  [R. at 33].  However, as the ALJ pointed out:

> [A]t the time that this opinion was formed, the claimant had just gone through a "very emotional divorce" (Exhibit 9F, p. 5) but has since remarried.  Also of interest is the fact that the claimant failed to mention her daily alcohol consumption to Dr. Howell (see Exhibit 9F, p. 2), or the fact (relayed to me at the hearing) that she got married at the age of 15, which undoubtedly played a key role in her decision to leave school.

[R. at 33].  In another portion of his decision, the ALJ also noted that a state agency psychologist found that Plaintiff "is no more than mildly limited in her activities of daily living, and only moderately limited in her concentration, persistence, pace, and social functioning."  [R. at 31, 523].

Plaintiff contends that the ALJ improperly failed to consider a diagnosis of adjustment disorder with depressed mood which was made by both Dr. Howell and the state agency psychologist.  [R. at 510, 516].  However, Plaintiff has failed to point to any significant functional limitations that resulted from this diagnosis.  The state

agency psychologist completed a mental residual functional capacity assessment and found that, although Plaintiff had an adjustment disorder with depressed mood, she retained the ability to recall and follow simple instructions. [R. at 529-30]. The psychologist also found that Plaintiff had no substantial limitations in her ability to deal with stressful tasks. [Id.]. Given these facts, the undersigned concludes that substantial evidence supports the ALJ's decision not to give significant weight to Dr. Howell's opinion regarding stress, as well as the ALJ's findings on Plaintiff's mental limitations.

### E.    Combined Effects of Plaintiff's Impairments

Plaintiff Lewis makes a brief argument that the ALJ erred because he did not consider the claimant's limitations "not only alone but in combination." [Doc. 13 at 5-6]. Plaintiff is correct in noting that the ALJ is required to consider the combined effect of the claimant's impairments. The Eleventh Circuit, however, has held that to satisfy this requirement, the ALJ simply needs to state that he considered a combination of the claimant's impairments. Jones v. Department of Health and Human Services, 941 F.2d 1529, 1533 (11th Cir. 1991) (citing Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986)). In the present case, the ALJ noted in his decision that Plaintiff's severe impairments are "not 'severe' enough to meet or medically equal,

23

either singly or in combination, any of the impairments listed in Appendix 1, Subpart

P, Regulation No. 4."  [R. at 31].  On the basis of this statement, the undersigned

concludes that the ALJ adequately considered the combined effect of the claimant's

impairments.  <u>Jones</u>, 941 F.2d at 1533; <u>Wheeler</u>, 784 F.2d at 1076.

## VI.    Conclusion

For all the foregoing reasons and cited authority, the court **ORDERS** that the

Commissioner's decision be **AFFIRMED**.

**SO ORDERED**, this 7th day of March, 2007.


JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)